Filed 5/23/23  P. v. Velten CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JENNIFER ANN VELTEN,<br><br>Defendant and Appellant. | 2d Crim. No. B317248<br>(Super. Ct. No. F000464362002)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION<br>[No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on May 18, 2023, be modified as follows:

1.  On page 4, second paragraph under DISCUSSION, the sentence beginning "The Legislature passed Assembly Bill 1437 . . . ," the word "Assembly" is changed to "Senate" so the sentence reads:

The Legislature passed Senate Bill 1437 in 2018 "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with

reckless indifference to human life." (Stats., 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

There is no change in the judgment.

_____

GILBERT, P.J.        YEGAN, J.        CODY , J.

Filed 5/18/23  P. v. Velten CA2/6 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JENNIFER ANN VELTEN,<br><br>    Defendant and Appellant. | 2d Crim. No. B317248<br>(Super. Ct. No.<br>F000464362002)<br>(San Luis Obispo County) |

Jennifer Ann Velten appeals a postjudgment order denying her petition for resentencing under Penal Code section 1172.6.[1] Velten contends, among other things, there was insufficient evidence she acted with reckless indifference to human life.  We affirm the order.

---

[1] Appellant sought resentencing under former section 1170.95.  Section 1170.95 was renumbered section 1172.6 effective June 30, 2022, with no changes in text.  (Stats. 2022, ch. 58, § 10).  Unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY

*Murder Conviction*

Victim Robert Uyeno worked in maintenance at the Farmhouse Motel in Paso Robles.  He lived in an onsite bungalow consisting of two small adjoining rooms, a bedroom and kitchen area.  Velten knew Uyeno and once stayed with him for a couple of days when she was having problems with an ex-boyfriend.

One evening in 2011, Velten and two other women were exchanging stories about Uyeno.  Velten said he had once tied her up while she was sleeping and assaulted her.  One of the women claimed Uyeno had raped her and molested children.  They both claimed he had locked them in his room against their will.  One of the women added that he had taken her laptop computer because she owed him some money.  Velten's boyfriend and another man who were in the room overheard them and grew angry.  The group formed a plan to rob Uyeno.  Velten would visit Uyeno at the Farmhouse Motel that evening on the pretext of exchanging sexual services for drugs.  Once inside his bungalow, she would leave the door unlocked and then text the others to let them know when it was okay to enter.  Velten's boyfriend and another man would then "beat the crap" out of Uyeno and take the laptop computer and his drugs.

Velten went to the Farmhouse Motel and knocked on the bungalow door.  Uyeno let her in.  He began using drugs while she smoked cigarettes and looked at a laptop.  Velten sent the text signaling the others to come.  Velten's boyfriend and a second man entered about 45 minutes later through the unlocked door.  Velten saw them jump on Uyeno and tie him up.  She also saw them attempt to choke him with a belt.  The men beat and choked Uyeno before deciding to kill him.  Velten waited in an adjoining room while her boyfriend stabbed Uyeno with an

2

icepick then slashed him with a kitchen knife. She could hear Uyeno screaming. As the group was leaving Velten's boyfriend realized Uyeno was still alive so he asked Velten for something sharper. Velten directed him to a utility knife on a nearby table, which he grabbed and used to cut Uyeno's neck. Velten's boyfriend asked if she wanted to stab Uyeno but she declined.

The group left with Uyeno's drugs, the laptop, and some lottery tickets but Velten returned about 10 minutes later because she forgot her purse. She noticed Uyeno on the bed unconscious but still breathing. She left him unaided. The next morning she and her boyfriend disposed of their clothes at a truck stop and fled the area. At some point, Velten buried the ice pick in the ground. The manager of the Farmhouse Motel found Uyeno dead after forcibly entering the bungalow.

The People charged Velten with murder (§ 187, subd. (a)) and other offenses after she admitted her role in Uyeno's death. She agreed to plead no contest to second degree murder and received a sentence of 15 years to life in state prison in 2012.

*Petition for Resentencing*

Velten petitioned for resentencing under section 1172.6 in 2019. The trial court found she made a prima facie showing for relief and issued an order to show cause. It appointed counsel and held an evidentiary hearing. The People opposed the petition, arguing Velten could presently be convicted of murder under amended section 189. Specifically, they argued she committed felony murder as a major participant in Uyeno's robbery and acted with reckless indifference to human life. (§§ 189, subd. (e)(3), 190.2, subd. (a)(17).)

A detective assigned to the original murder investigation testified at the evidentiary hearing. The People introduced interrogation transcripts in which Velten and her boyfriend gave

3

largely consistent accounts of Uyeno's beating and murder. They also introduced the transcript of Velten's preliminary hearing in 2012 and her pre-sentence probation report. The court denied the petition, finding she helped plan Uyeno's robbery and showed reckless indifference to life during and after the attack.

DISCUSSION

*Sufficiency of the Evidence*

Velten contends substantial evidence does not support the trial court's finding that she acted with a reckless indifference to human life. We do not agree.

The Legislature passed Assembly Bill 1437 in 2018 "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats., 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.) It enacted section 1170.95 (now section 1172.6) to provide a procedure by which persons convicted under the felony murder or natural and probable consequences doctrines could petition for resentencing under the new laws. (*Gentile*, at p. 853.)

At the evidentiary hearing on a petition for resentencing the prosecution bears the burden of proving beyond a reasonable doubt the petitioner is not entitled to resentencing. (*Id.*, subd. (d)(3).) The trial court sits as a trier of fact at the hearing. It may consider "evidence previously admitted at any prior hearing or trial that is admissible under current law" and "[t]he prosecutor and the petitioner may . . . offer new or additional evidence to meet their respective burdens." (*Ibid.*) We review its findings for substantial evidence. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.) Accordingly, "we review the evidence in the light most favorable to the prosecution and presume in

4

support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; *Owens*, at p. 1022.)

"Reckless indifference to human life has a subjective and an objective element. [Citations.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" [Citations.]" (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

"Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citations.] "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" [Citations.]" *In re Scoggins, supra,* 9 Cal.5th at p. 677

Velten helped orchestrate a robbery that turned into a killing. She gained access to Uyeno's bungalow under false pretenses so others could physically assault him and steal predetermined items. She lingered for 30 minutes or more a few

5

feet outside the bedroom and listened while the attackers beat, choked, and stabbed their victim. She pointed out a utility knife when her boyfriend requested a deadlier killing instrument. She was offered but declined an invitation to stab the victim. Lastly, she noticed Uyeno still breathing when she returned 10 minutes later for her purse and chose to leave him unaided. Substantial evidence supports the trial court's findings that Velten was a major participant in the robbery and acted with reckless indifference to the victim's life. (See *Owens*, *supra*, 78 Cal.App.5th at p. 1023, quoting *People v. Clark* (2016) 63 Cal.4th 522, 617 ["Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not specifically desire that death as the outcome of his actions'"].)

Miranda *Error*

Velten next contends *Miranda*[2] error occurred because the trial court based its decision on incriminating statements she made during her interrogation in 2011. We consider the issue waived because she did not raise it below. (Evid. Code, § 353; see *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194 ["unless a defendant asserts in the trial court a specific ground for suppression of his or her statements to police under *Miranda*, that ground is forfeited on appeal, even if the defendant asserted other arguments under the same decision"].) We would reject the argument even if she had raised it. Wrongful admission of evidence at a section 1172.6 hearing does not implicate one's rights against self-incrimination. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706 ["Because a sentence modification under

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

section [1172.6] is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment"].) In addition, the interrogation transcript shows detectives admonished Velten pursuant to *Miranda* and stopped asking questions when she requested an attorney. No violation occurred.[3]

*Remaining Contentions*

Velten contends the trial court erred when it used an "imputed malice form of murder," i.e., felony murder, as the basis for upholding her conviction for second degree murder. It did not err. Prosecutors may oppose resentencing by proving guilt under any theory encompassed by current sections 188 and 189. (§ 1172.6, subd. (d)(3).) This is not limited to theories raised originally. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 444-445 [because a resentencing hearing "'does not subject a defendant to the risk of additional punishment, is not a trial, permits both parties to present new evidence, and merely considers whether the defendant's request for leniency meets the necessary criteria, there is no constitutional problem in allowing new theories of murder liability at that hearing'"].) The People chose to oppose the petition on the theory Velten was a major participant in a felony in which a death occurred. (§ 189, subd. (e)(3).) The trial court properly based its ruling on the mental state required to prove guilt of this crime.

Lastly, the record contradicts Velten's assertion that the trial court applied a "quasi-appellate" substantial evidence standard of proof. The court told the People they "should be

---

[3] These conclusions render moot Velten's argument that Senate Bill 775's amendments to the resentencing statutes apply retroactively to her appeal and require reversing the trial court's ruling on her petition.

prepared to prove [felony murder] beyond a reasonable doubt as to the elements of the crime." When it denied the petition, the court stated the "best version" of the facts still showed Velten acted as a major participant who acted with reckless indifference to human life.

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED.</u>


CODY, J.


We concur:


GILBERT, P.J.


YEGAN, J.

8

Jesse J. Marino, Judge

Superior Court County of San Luis Obispo

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.